UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

QUINCY L. WEST,

                    Plaintiff,

      v.                                  Case No. 22-CV-1068

LOUIS DEJOY,

                    Defendant.

## DECISION AND ORDER

This action is before the court on the defendant's motion to dismiss. Therefore, the court presumes the facts set forth below, which are taken from the complaint, to be true at this stage of the proceedings. *Gruber v. Creditors' Prot. Serv.*, 742 F.3d 271, 274 (7th Cir. 2014).

### 1. Facts and Procedural History

The United States Department of Veterans Affairs determined that Quincy L. West was completely disabled due to service-related post-traumatic stress disorder (PTSD). (ECF No. 1, ¶ 7.) West subsequently found employment with the United States Postal Service (USPS) but was fired after about a year because he had accumulated too many absences. (ECF No. 1, ¶¶ 8-10.)

The American Postal Workers Union filed a grievance on West's behalf regarding his termination. This resulted in a May 23, 2016, agreement (ECF No. 10) whereby the Notice of Removal would be removed from West's record and he would be allowed to resign, subject to the condition that he not reapply to work for USPS for at least a year. (ECF No. 1, ¶ ¶ 12-15.)

More than five years later West applied to work for USPS and stated that he had previously resigned from USPS. (ECF No. 1, ¶¶ 17-18.) He was again hired and began work on October 23, 2021. (ECF No. 1, ¶ 19.) On December 4, 2021, he sought emergency treatment for PTSD symptoms. (ECF No. 1, ¶ 23.) He "put in for Wounded Warrior Leave for the dates December 4, 2021 through December 11, 2021." (ECF No. 1, ¶ 27.) However, USPS entered his absences from December 5 through December 7, as being without leave. West was scheduled off on December 8 and 9. (ECF No. 1, ¶¶ 30-31.) USPS approved his Wounded Warrior Leave for December 10 and 11, 2021. (ECF No. 1, ¶ 32.)

On December 12, 2021, West requested additional leave from December 9 through December 20, 2021. (ECF No. 1, ¶ 34.) USPS granted West's request for Wounded Warrior leave for December 12, 2021, but listed him as being on leave without pay for December 13 through December 31, 2021. (ECF No. 1, ¶ 37.)

On December 14, 2021, West received notice that USPS was terminating his employment effective immediately due to unacceptable attendance and performance.

(ECF No. 1, ¶ 39.) West's manager subsequently stated that one of the reasons for terminating West was because he falsely stated on his application that he had resigned his prior employment with USPS when, in fact, he had been fired. (ECF No. 1, ¶ 51.)

West filed this action alleging disability discrimination (count one), breach of contract (count two), and "detrimental reliance" as an alternative to his breach of contract claim. He further seeks punitive damages. (ECF No. 1, ¶ E.)

USPS has moved to dismiss West's breach of contract claim, his alternative claim of "detrimental reliance," and his request for punitive damages. (ECF No. 14.) In accordance with 28 U.S.C. § 636(c), all parties have consented to the full jurisdiction of a magistrate judge. (ECF Nos. 3, 9.) The court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1339.

**2. Motion to Dismiss Standard**

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A claim satisfies this pleading standard when its factual allegations "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555-56.

With respect to the pending motion to dismiss both sides rely on more than just the complaint. (ECF Nos. 15-1; 16-1; 16-2.) Courts are generally limited to considering only the pleadings when resolving a motion to dismiss. *See* Fed. R. Civ. P. 12(d). USPS asserts in a footnote that the court may properly consider the documents it submitted (ECF No. 15 at 3); West offers no basis for the court considering the documents he submitted.

The May 23, 2016, Step One Grievance Settlement entered into between the union and USPS whereby USPS agreed to allow West to resign in lieu of termination (ECF No. 10) is properly part of the pleadings under Fed. R. Civ. P. 10(c). Although this document was not filed until about two months after the complaint, West referred to it in his complaint (ECF No. 1, ¶ 13).

However, the remaining documents and facts are not properly before the court. The court rejects USPS's argument that the court can take judicial notice of the collective bargaining agreement as a public record. *See Murphy v. UPS*, 528 F. Supp. 3d 983, 986 (E.D. Wis. 2021). West does not reference the collective bargaining agreement in his complaint. As such, it cannot be considered part of the pleadings under Fed. R. Civ. P. 10(c). Nor can the court consider the declarations submitted by West regarding the exhaustion of his remedies under the collective bargaining agreement. *Roman v. United States Postal Serv.*, 821 F.2d 382, 384-85 (7th Cir. 1987) (holding that the consideration of a collective bargaining agreement and affidavit stating that a search of USPS records

found no record of plaintiff filing a grievance required treating the motion to dismiss as one for summary judgment). No one has requested that the court convert the present motion to one for summary judgment, and the court declines to do so.

3. Analysis

   3.1. Breach of Contract

Following West's grievance related to his first termination from USPS the union and USPS entered into an agreement whereby USPS would remove from his file any indication that he was terminated and to instead allow him to resign. West alleges that USPS breached that agreement and never updated his employment record to indicate that he resigned rather than was fired. This allegedly injured him because USPS concluded that West had lied on his re-application by stating he had resigned his prior employment, and it then relied on this perceived misrepresentation as a factor in his second termination.

USPS argues that the court must dismiss West's breach of contract claim because it arises under § 2 of the Postal Service Reorganization Act, 39 U.S.C. § 1208(b), and the Court of Appeals for the Seventh Circuit recently said, albeit in a non-precedential unpublished decision, *see* Cir. R. 32.1(b) (7th Cir.), "A union member may sue for a violation of § 1208(b) of the Postal Reorganization Act only if the union has breached its duty of fair representation by engaging in conduct that is 'arbitrary, discriminatory, or in bad faith.'" *Holmes v. DeJoy*, No. 21-3018, 2022 U.S. App. LEXIS 8951, at *3 (7th Cir.

Apr. 4, 2022). West responds that 39 U.S.C. § 1208(b) does not apply because the contract that USPS allegedly breached was not the collective bargaining agreement.

The Postal Reorganization Act expressly authorizes "[s]uits for violation of contracts between the Postal Service and a labor organization representing Postal Service employees … [to] be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy." 39 U.S.C. § 1208(b). This is an analogue of § 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a), and courts interpret the provisions identically and the caselaw is interchangeable. *Holmes*, 2022 U.S. App. LEXIS 8951, at *3.

Contrary to West's argument, § 1208(b) is not limited to collective bargaining agreements; it also applies to grievance settlement agreements. *Olson v. Bemis Co.*, 800 F.3d 296, 301-02 (7th Cir. 2015). The cases West cites (ECF No. 16 at 2 (citing *Lingle v. Norge Div. of Magic Chef*, 486 U.S. 399 (1988); *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 107 S. Ct. 2425 (1987); *Crosby v. Cooper B-Line, Inc.*, 725 F.3d 795, 802 (7th Cir. 2013))) are distinguishable. None involved a breach of a grievance settlement agreement. Instead, they involved state law retaliation claims, *see Lingle*, 486 U.S. 399; *Crosby*, 725 F.3d 795, and individual employment contracts with employees not subject to a collective bargaining agreement, *Williams*, 482 U.S. 386. Thus, West's breach of contract claim comes under § 1208(b).

However, the court's statement in *Holmes* that a claim under § 1208(b) must be accompanied by a fair representation claim against the union is not as definitive as it may appear. "[I]f the employee's claim is *not* subject to mandatory alternative-dispute resolution (under the CBA or otherwise), he can bring 'a straightforward breach of contract suit under § 301,' which 'closely resembles an action for breach of contract cognizable at common law." *Olson*, 800 F.3d at 303 (quoting *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 163, 165 (1983)) (emphasis in original). There is no need for a companion fair representation claim in such circumstances. *Id.*

The reason for the caveat relates to the procedural purpose served by a fair representation claim. A fair representation claim may enable an employee to evade an exhaustion defense when the reason the employee failed to exhaust was because the union did not fairly represent him by failing to pursue (or further pursue) a grievance on his behalf. *See Roman*, 821 F.2d at 388 (citing *Vaca v. Sipes*, 386 U.S. 171, 186)[1]; *see also Vaca*, 386 U.S. at 185; *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652 (1965). Or a fair representation claim may be necessary if the employee's lawsuit requires evading the resolution reached through the collective bargaining agreement's dispute resolution procedure, such as a settlement that the union entered on the employee's behalf. *See,*

---

[1] An employee may also seek to excuse his failure to exhaust by showing that the employer has effectively repudiated the contractual remedies or the grievance procedures would be futile a plaintiff may be excused from exhaustion. *Roman*, 821 F.2d at, 388 (quoting *Vaca v. Sipes*, 386 U.S. 171, 186 (1967)). Under either theory, a fair representation presumably would likewise be unnecessary to excuse exhaustion.

*e.g.*, *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 570-72 (1976); *Coker v. Brennan*, 665 F. App'x 545, 549 (7th Cir. 2016).

Although USPS presents West's failure to include a fair representation claim and his failure to exhaust his remedies under the collective bargaining agreement as two independent reasons for dismissal, here they are actually two sides of the same coin. If West was not required to exhaust his remedies under the collective bargaining agreement, he was not required to bring a fair representation claim.

West argues that he could not have submitted a grievance regarding USPS's alleged breach of the settlement agreement because he did not learn about it until May 22, 2022, during the EEO process related to his second termination. (ECF No. 16 at 3-4.) And he could not have submitted a grievance regarding his second termination because, when he was fired, he was still a probationary employee and not entitled to pursue a grievance. (ECF No. 16 at 4.)

The fact that West was not a union member when he learned of USPS's alleged breach does not mean he did not have remedies under the collective bargaining agreement. Former union members generally must still exhaust their remedies under the collective bargaining agreement before pursuing in court a claim which relates to events that occurred when he *was* covered under the collective bargaining agreement. *See Roman*, 821 F.2d at 387.

However, USPS is not necessarily entitled to dismissal of count two merely because the argument that West offered in response fails. At this stage it is USPS's burden to show that, in light of the allegations in the complaint, there is no plausible way West's breach of contract claim can succeed, *i.e.*, that the claim was subject to the collective bargaining agreement's dispute resolution provisions and he was required to exhaust those remedies. It has failed to do so.

The fact that a claim is under § 1208(b), by itself, does not demonstrate that it is subject to the collective bargaining agreement's dispute resolution procedures. *Cf. Olson*, 800 F.3d at 303 (noting that a § 301 claim might not be subject to the alternative dispute resolution provisions of a collective bargaining agreement).

The court also notes that a presumption exists that, when a claim is subject to arbitration, a breach of an agreement settling that claim will likewise be subject to arbitration. *Olson*, 800 F.3d at 304 (quoting *Niro v. Fearn Int'l, Inc.*, 827 F.2d 173, 175 (7th Cir. 1987)). However, USPS does not make this argument. And without giving West the opportunity to address the issue, the court finds this an insufficient basis to grant USPS's motion.

In sum, because West's breach of contract claim relates to an alleged breach of a grievance settlement agreement, it is subject to § 1208(b). Consequently, West must pursue whatever remedies he has under the collective bargaining agreement before pursuing his claim in court. The fact that he was no longer a union employee when he

learned of USPS's alleged breach does not relieve him of that obligation. However, if his claim was not subject to the collective bargaining agreement's dispute resolution procedures, there was no need to attempt to exhaust those remedies and no need to bring fair representation claim against the union. And the pleadings do not show that West's claim was subject to the collective bargaining agreement's dispute resolution procedures. Because it is plausible that West was not required to exhaust his remedies under the collective bargaining agreement, the court must deny USPS's motion to dismiss count two of the complaint.

### 3.2. Detrimental Reliance

West alleged "detrimental reliance" in count two of his complaint as an alternative to his breach of contract claim. He asserts that he did so in case USPS argued that the grievance settlement agreement was not a valid contract. (ECF No. 16 at 4.) Aside from this explanation, West does not otherwise defend his detrimental reliance claim.

As a preliminary matter, detrimental reliance is not a claim under Wisconsin law. *Shanahan v. Butler*, No. 13-C-1269, 2014 U.S. Dist. LEXIS 45389, at *12 (E.D. Wis. Apr. 2, 2014). Rather, it is a term that relates to the policy underlying the doctrine of promissory estoppel. *See Bicknese v. Sutula*, 2003 WI 31, ¶13 n.2, 260 Wis. 2d 713, 723, 660 N.W.2d 289, 294.

But, more materially, even if the court construes this alternative claim for relief as one for promissory estoppel, dismissal is appropriate. USPS does not dispute that the grievance settlement agreement was a valid contract. (ECF No. 17 at 4-5.) In the absence of a dispute as to the validity of the contract, there is no place for West's alternative claim for relief. Therefore, the court will grant USPS's motion to dismiss West's "detrimental reliance" claim.

### 3.3. Punitive Damages

Finally, West's complaint demands "[p]unitive damages because Defendant acted with malice and reckless indifference of her [sic] rights." (ECF No. 1, ¶ E.) USPS moved to dismiss this demand because punitive damages are not available under the Rehabilitation Act. (ECF No. 15 at 8-9.)

West acknowledges that punitive damages are unavailable and "consents to withdrawing any claims of punitive damages." (ECF No. 16 at 4.) Pursuant to West's consent, the demand for punitive damages is deemed withdrawn.

**IT IS THEREFORE ORDERED** that USPS's motion to dismiss (ECF No. 14) is **granted in part**. It is granted with respect to West's "detrimental reliance" claim, and his

demand for punitive damages is deemed withdrawn. The motion is denied in all other respects.

Dated at Milwaukee, Wisconsin this 31st day of January, 2023.

_____
WILLIAM E. DUFFIN
U.S. Magistrate Judge