UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

**QUINCY L. WEST,**

**Plaintiff,**

v.  Case No. 22-CV-1068

**LOUIS DEJOY,**

**Defendant.**

## DECISION AND ORDER

**1. Background**

Beginning on October 23, 2021, Quincy West worked briefly as a custodian for the United States Postal Service. (ECF No. 51-2, ¶ 7.) His employment was terminated less than two months later, on December 13, 2021.[1] (ECF Nos. 48-2 at ¶¶ 28, 31; 56, ¶ 53.) During nearly his entire tenure, the supervisor responsible for West's shift, Austin Bogrand, was on leave (ECF No. 51-2, ¶ 22), and so Angel McClinton, who generally worked a different shift, was West's acting supervisor (ECF No. 51-2, ¶¶ 16, 23). Tom Aiken was McClinton's supervisor. (ECF No. 51-2, ¶ 17.)

---

[1] The defendant submitted a proposed finding referring to West having been terminated on December 3, 2021. (ECF No. 48, ¶ 92.) Although West admitted this fact (ECF No. 51-2, ¶ 92), West's Notice of Termination was dated December 13, 2021 (ECF No. 48-2 at ¶ 28; *see also* ECF No. 48-2 at ¶ 31; ECF No. 56, ¶ 53).

McClinton completed a 30-day performance evaluation for West on November 23, 2021, and rated his performance as unsatisfactory in every category. (ECF No. 51-2, ¶ 38.) McClinton told Aiken of West's evaluation, and Aiken stated that they would speak to West together. (ECF No. 51-2, ¶ 43.) When West asked McClinton about his 30-day review, she told him that she needed to wait for Aiken. (ECF No. 51-2, ¶ 45.)

On the day that Aiken and McClinton were supposed to meet with West, he reported an incident that occurred with a co-worker. (ECF No. 51-2, ¶ 46.) Specifically, West reported to Aiken that on November 27, 2021, one of his co-workers went on a "tirade" and made comments that included a "veiled threat of violence at work." (ECF Nos. 51-2, ¶ 48; 56, ¶ 38.) In reporting the incident, West informed Aiken that he suffered from PTSD related to his prior military service. (ECF No. 51-2, ¶ 50.) West then returned to work. (ECF No. 51-2, ¶ 53.)

A week later, on December 4, 2021, West went to the emergency department of the VA hospital for symptoms he attributed to PTSD that were exacerbated by the coworker's perceived threat. (ECF No. 51-2, ¶¶ 57-58.) "At the VA, West spoke to a doctor, was given paperwork, some recommendations, a treatment plan, and was sent home." (ECF No. 51-2, ¶ 59.) He never returned to work. (ECF No. 51-2, ¶ 60.)

West submitted a request for "Wounded Warrior Leave-FMLA" for December 4-11, 2021, and then another for December 12-20, 2021. (ECF No. 51-2, ¶¶ 62-63.) Around this time, Bogrand prepared a 60-day evaluation of West based on two days he observed

West working. (ECF No. 51-2, ¶ 69.) Bogrand likewise rated West's performance as unsatisfactory in all six categories. (ECF No. 51-2, ¶ 70.)

On December 13, 2021, an "Attendance Control Supervisor" prepared a letter terminating West, which Aiken signed. (ECF Nos. 51-2, ¶ 76; 48-2 at 28.)

West filed an administrative claim of discrimination (ECF No. 48-2 at 29-33) and then filed this action wherein he alleged two claims under the Rehabilitation Act of 1973, 29 U.S.C. § 794. Specifically, he claims that the defendant violated the Rehabilitation Act by failing to accommodate his disability and terminating him because of his disability. (ECF No. 1, ¶¶ 54-60.) He also alleged a claim for breach of contract or detrimental reliance (ECF No. 1, ¶¶ 61-69), which was dismissed pursuant to the stipulation of the parties (ECF Nos. 24, 25).

The defendant has moved for summary judgment. (ECF No. 46.) West responded (ECF No. 51) and the defendant has replied (ECF No. 55). In replying, the defendant submitted a reply in support of his proposed findings of fact. (ECF No. 56.) "Although Civil Local Rule 56(b)(3)(B) authorizes a reply to address any *additional* proposed findings of fact submitted by a party opposing the summary judgment motion, it does not allow the moving party to reply to the opposing party's response to the moving party's proposed findings of fact." *Maxwell v. Outagamie Cty. Jail*, No. 20-CV-386, 2022 U.S. Dist. LEXIS 214261, at *13 (E.D. Wis. Nov. 29, 2022) (quoting *Arms v. Milwaukee Cty.*, No. 18-CV-1835, 2021 U.S. Dist. LEXIS 64654, at *7 (E.D. Wis. Apr. 1, 2021) (emphasis in

original)); *Hydraulics Int'l, Inc. v. Amalga Composites, Inc.*, No. 20-CV-371, 2022 U.S. Dist. LEXIS 166539, at *3 (E.D. Wis. Sep. 15, 2022). Therefore, the "Postal Service's Replies in Support of the SOF Disputed in West's RDPMF" (ECF No. 56 at 2-17) are stricken.

All parties have consented to the full jurisdiction of this court pursuant to 28 U.S.C. § 636(c). (ECF No. 4, 8.) The court has jurisdiction under 28 U.S.C. § 1331. The defendant's motion for summary judgment is ready for resolution.

**2. Summary Judgment Standard**

The court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict.

*Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009).

To survive summary judgment a party cannot just rely on his pleadings but "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Servs.*, Inc., 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

3. **Analysis**

   a. **Failure to Accommodate – Exhaustion**

Claims under the Rehabilitation Act are generally assessed under the same standards applicable to claims under the Americans with Disabilities Act (ADA). *See* 29 U.S.C. § 794(d); *Conners v. Wilkie*, 984 F.3d 1255, 1260 (7th Cir. 2021). As to all employment-related claims under the Rehabilitation Act, a person must exhaust his administrative remedies before filing suit. *McHale v. McDonough*, 41 F.4th 866, 869 (7th Cir. 2022); *Edwards v. Donahoe*, 503 F. App'x 468, 471 (7th Cir. 2013) (unpublished); *cf. Swain v. Wormuth*, 41 F.4th 892, 896 n.2 (7th Cir. 2022) (stating that exhaustion is "likely a requirement for Rehabilitation Act claims, though our case law has not been clear on the point"). For an employee of the United States Postal Service, this process includes presenting an Equal Employment Opportunity claim to the Postal Service. *See* 29 C.F.R.

§ 1614.105(a). A plaintiff cannot bring claims in a lawsuit that were not included in the EEO charge. *McHale*, 41 F.4th at 869.

The defendant contends that West's failure to accommodate claim must be dismissed because he failed to present it in his EEO charge. (ECF Nos. 47 at 9-15; 48-2 at 29-30.) In response, West notes that he filed the form without an attorney and the form does not include "separate boxes for 'disability' and 'failure to reasonably accommodate'." (ECF No. 51 at 5.)

The form, PS Form 2565, includes a section for the filer to check a box to indicate which of ten types of discrimination he is alleging. (ECF No. 48-2 at 29.) One box is for "Disability," which is then followed by the parenthetical "Specify:" (ECF No. 48-2 at 29.)

Whether the checkbox portion of the form encompasses both a disability discrimination claim and a failure to accommodate claim is immaterial. West never checked the "Disability" box. (ECF No. 48-2 at 29.) The only boxes he checked were for race and sex discrimination, claims not included in his lawsuit. Therefore, the court looks to the portion of his EEO charge in which he explained the nature of his allegations. *See McHale*, 41 F.4th at 870 (quoting *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1111 (7th Cir. 1992)).

In the narrative portion of his EEO charge West offered nothing to suggest that he suffered discrimination on the basis of his race or sex. But he stated that he is "a disabled veteran with service connected ptsd" and explained how the perceived threat

from his co-worker put him "on high alert." (ECF No. 48-2 at 30.) He explained how he left work on December 3, 2021, went to the hospital, and sought Wounded Warrior leave. (ECF No. 48-2 at 30.)

Despite failing to check the disability box on the form, West's explanation of the nature of his claim was sufficient to exhaust the disability discrimination claim he presents in his lawsuit, and the defendant does not argue otherwise. Rather, the question here is whether his explanation of his claim was sufficient to exhaust his distinct failure to accommodate claim.

West may pursue a claim he did not explicitly present in his EEO charge only if it is "reasonably related to the allegations of the … charge and growing out of such allegations." *McHale*, 41 F.4th at 870 (quoting *Jenkins v. Blue Cross Mut. Hosp. Ins., Inc.*, 538 F.2d 164, 167 (7th Cir. 1976) (en banc)). This is a liberal standard and requires only that "there is a reasonable relationship between the allegations in the charge and those in the complaint, and the claim in the complaint could reasonably be expected to be discovered in the course of the [administrative] investigation." *McHale*, 41 F.4th at 870 (quoting *Teal v. Potter*, 559 F.3d 687, 692 (7th Cir. 2009)). This requires a factual relationship between the claim alleged in the EEO charge and the claim in the lawsuit. *Donley v. McDonough*, No. 20 C 2710, 2024 U.S. Dist. LEXIS 85903, at *23 (N.D. Ill. May 13, 2024) (quoting *Cheek v. W. & S. Life Ins., Co.*, 31 F.3d 497, 501 (7th Cir. 1994)). "[T]he

charge and the complaint must, at minimum, describe the *same conduct* and implicate the *same individuals*." *Id.* (quoting *Cheek*, 31 F.3d at 501 (emphasis in original)).

Failure to accommodate claims and disability discrimination claims "are analyzed differently under the law." *Green v. Nat'l Steel Corp.*, 197 F.3d 894, 898 (7th Cir. 1999) (citing *Weigel v. Target Stores*, 122 F.3d 461, 464 (7th Cir. 1997)). "[T]hey are not like or reasonably related to one another, and one cannot expect a failure to accommodate claim to develop from an investigation into a claim that an employee was terminated because of a disability." *Id.*; *see also Riley v. City of Kokomo*, 909 F.3d 182, 190 (7th Cir. 2018) (discussing and applying *Green*); *Miller v. Office of the Chief Judge of Cir. Court Official Court Reporters Office*, No. 19 C 4216, 2022 U.S. Dist. LEXIS 43967, at *36 (N.D. Ill. Mar. 11, 2022) (holding that a claim that plaintiff was fired because of PTSD presented a discrimination claim, not a failure to accommodate claim and plaintiff failed to exhaust a failure to accommodate claim); *Reese v. Krones, Inc.*, No. 18-CV-1041, 2019 U.S. Dist. LEXIS 171954, at *17-18 (E.D. Wis. Oct. 3, 2019); *Edwards v. Ill. Dep't of Fin. & Prof'l Regulation*, 210 F. Supp. 3d 931, 943 (N.D. Ill. 2016) ("Courts in this circuit are clear: a claim for failure to accommodate is separate and distinct under the ADA from a disability discrimination claim."); *Giovanni v. Megabus USA, LLC*, No. 14 C 3195, 2015 U.S. Dist. LEXIS 144580, at *10 (N.D. Ill. Oct. 23, 2015) ("a plaintiff does not exhaust a failure to accommodate claim by including a disability discrimination claim in an EEOC charge"); *Thompson v. Cmty. Assistance Programs*, No. 15 c 2249, 2015 U.S. Dist. LEXIS

113491, at *8 (N.D. Ill. Aug. 27, 2015) ("Complaining of disparate treatment or wrongful discharge is insufficient to exhaust administrative remedies as to retaliation or failure to accommodate claims."); *Whitaker v. Milwaukee Cty.*, No. 12-CV-1006-JPS, 2013 U.S. Dist. LEXIS 161114, at *15 (E.D. Wis. Nov. 12, 2013); *Ponziano v. W. & S. Life Ins. Co.*, No. 2:11CV263, 2012 U.S. Dist. LEXIS 40037, at *15 (N.D. Ind. Mar. 23, 2012); *Chalden v. Salazar*, No. 10 C 1963, 2011 U.S. Dist. LEXIS 68964, at *16 (N.D. Ill. June 27, 2011); *Jokiel v. Alpha Baking Co.*, No. 03 C 3845, 2005 U.S. Dist. LEXIS 13610, at *18 (N.D. Ill. June 27, 2005); *cf. Torzewski v. Cosco Shipping Lines N. Am., Inc.*, 414 F. Supp. 3d 1143, 1150 (N.D. Ill. 2019) (finding that failure to accommodate and discrimination claims "are clearly based on factually distinct allegations"); *Ammons-Lewis v. Metro. Water Reclamation Dist. of Greater Chi.*, No. 11 C 6920, 2012 U.S. Dist. LEXIS 68770, at *9 (N.D. Ill. May 17, 2012) ("Under settled precedent, the retaliation allegations in the administrative charges are not like or reasonably related to the failure to accommodate claim in Ammons-Lewis's federal complaint.").

Nothing in West's EEO charge is like or reasonably related to the failure to accommodate claim he now attempts to pursue. His EEO charge rests on the allegation that he was treated differently (and adversely) because of his disability. A claim of differential treatment is the essence of a discrimination claim. A failure to accommodate claim, on the other hand, rests on a claim that he was *not* treated differently because of his disability but should have been. *See DiFranco v. City of Chi.*, 589 F. Supp. 3d 909, 917

(N.D. Ill. 2022). Such allegations are wholly absent from his EEO charge. Consequently, the court must grant the defendant's motion for summary judgment and dismiss without prejudice West's failure to accommodate claim. *See McHale*, 41 F.4th at 872 ("When a plaintiff fails to exhaust administrative remedies, her complaint must be dismissed without prejudice.").

### b. Disability Discrimination

"To prove a claim of disability discrimination under the Rehabilitation Act, a plaintiff must show that: (1) he is disabled, (2) he is otherwise qualified to perform the essential functions of the job with or without reasonable accommodation, and (3) he suffered an adverse job action 'solely by reason of … his disability.'" *Swain*, 41 F.4th at 899 (quoting 29 U.S.C. § 794(a)). The "solely by reason of" standard applicable to claims under the Rehabilitation Act applies a stricter standard than that applicable to claims under the ADA. *Id.* at 899 n.4.

The defendant argues that West was not "otherwise qualified to perform the essential functions of the job with or without accommodation" (ECF No. 47 at 16 (citing *Swain*, 41 F.4th at 899).) The defendant points to West's poor performance reviews and the fact that before and after his employment with the Postal Service he obtained Social Security disability benefits.

West disputes whether he was performing as poorly as his supervisors allege. (*See, e.g.,* ECF No. 51-2, ¶¶ 41.) Although West's supervisors documented deficiencies in

his performance, the accuracy and extent of those alleged deficiencies are matters the court cannot resolve at summary judgment.

As for his receipt of Social Security disability benefits, West received disability benefits because of his PTSD. He reported that his PTSD limited his ability to, among other things, see, hear, speak, concentrate, remember, understand, follow directions, complete tasks, or get along with others. (ECF No. 51-2, ¶¶ 108, 110.)

A person is eligible to receive Social Security disability benefits only if he is unable to work. *See* 42 U.S.C. § 423(d)(2). A plaintiff's receipt of disability benefits is not necessarily inconsistent with a claim that he is otherwise qualified to perform the essential functions of the job. *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 797-98 (1999). But to survive a defense motion for summary judgment, a plaintiff must explain the apparent inconsistency. *Id.* at 798.

In conjunction with proceedings regarding his Social Security benefits, on July 9, 2021, and September 20, 2021 (roughly one month before he began working for the Postal Service), West submitted continuing disability reports reiterating his limitations. (ECF Nos. 48-12 at 14-32; 51-2, ¶¶ 109-11.) He confirmed his limitations in a function report dated December 25, 2021—twelve days after his employment with the Postal Service was terminated. (ECF Nos. 48-12 at 35-42; 51-2, ¶ 112-14.) And on September 10, 2023, he stated under penalty of perjury that he was unable to work due to his PTSD-related limitations. (ECF Nos. 48-12 at 47-52, 51-2, ¶ 117-18 (the form states, "I am

11
Case 2:22-cv-01068-WED   Filed 07/22/24   Page 11 of 18   Document 57

disabled and my impairment is the same as (or related to) the impairment which was the basis for my prior entitlement. I am not performing substantial gainful activity (SGA) and my medical condition prevents me from performing SGA.").)

West's claim of disability is on its face inconsistent with his contemporaneous claim of having been capable of performing the essential functions of his job as a custodian with the Postal Service. Thus, the court turns to whether West offers a sufficient explanation for this contradiction. "To be sufficient, an explanation must 'warrant a reasonable juror's concluding that, assuming the truth of, or the plaintiff's good-faith belief in, the earlier statement, the plaintiff could nonetheless perform the essential functions of her job, with, or without reasonable accommodation." *Butler v. Vill. of Round Lake Police Dep't*, 585 F.3d 1020, 1023 (7th Cir. 2009) (internal quotation marks omitted) (quoting *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 807, 119 S. Ct. 1597, 1603, 143 L.Ed.2d 966, 977 (1999)).

West's explanation is superficial. He merely notes that a person receiving social security disability benefits is not precluded from attempting to work. (ECF No. 51 at 7.)

It is well-established that social security claimants may attempt to enter the workforce and, if unsuccessful, their attempt will not undermine their receipt of benefits. *See Cleveland*, 526 U.S. at 805. However, the defendant is not arguing that it is inconsistent for West to have attempted to work while receiving social security benefits. The defendant's argument is the converse—that it is inconsistent for West to now claim

he was qualified to perform the essential functions of a custodian while having simultaneously claimed he was unable to perform any work.

"[A] person who applied for disability benefits must live with the factual representations made to obtain them, and if these show inability to do the job then a[] [disability discrimination] claim may be rejected without further inquiry." *Opsteen v. Keller Structures, Inc.*, 408 F.3d 390, 392 (7th Cir. 2005). West has failed to provide an explanation that would permit a reasonable juror to find he was disabled for purposes of receiving Social Security benefits yet otherwise qualified to perform the essential functions of the custodian job with the Postal Service. As such, the defendant is entitled to summary judgment as to West's disability discrimination claim.

The defendant is alternatively entitled to summary judgment because West has also failed to show he was fired solely because of his alleged disability. While the court cannot resolve the factual question of whether West's performance was truly as bad as his supervisors reported, it is undisputed that his supervisors rated his performance as poor. (ECF No. 51-2, ¶¶ 38, 40-41, 43, 55, 70-71.) His supervisors' subjective assessment of his performance is relevant in that it corroborates the proffered reason for his termination. *See Helland v. S. Bend Cmty. Sch. Corp.*, 93 F.3d 327, 330 (7th Cir. 1996) ("[T]the pretext inquiry focuses on whether the employer's stated reason was honest, not whether it was accurate. 'Pretext means a lie, specifically a phony reason for some

13
Case 2:22-cv-01068-WED   Filed 07/22/24   Page 13 of 18   Document 57

action.'" (ellipses omitted) (quoting *Russell v. Acme-Evans Co.*, 51 F.3d 64, 68 (7th Cir. 1995)).

West contends that the poor evaluations were pretexts for discrimination. (ECF No. 51 at 8-12). He notes that he was never informed of his poor performance, his termination came shortly after he informed his supervisor that he suffered from PTSD, and the Postal Service failed to follow its own policies by not discussing his performance reviews with him. (ECF No. 51 at 8-12.)

It is immaterial whether an employer had a good reason or even no reason to fire an employee; it matters only if the employer had an impermissible reason. Thus, even if West's supervisors were wrong in their assessment of his performance, he would not have a claim. He must show that his supervisors dishonestly provided poor evaluations and then pointed to those evaluations as a pretext to fire him because of his disability.

Demonstrating pretext requires more than being able to point to "faulty reasoning or mistaken judgment on the part of the employer." *Swain*, 41 F.4th at 900 (quoting *Graham v. Arctic Zone Iceplex, LLC*, 930 F.3d 926, 929 (7th Cir. 2019)). If he did at all (*see* ECF No. 51-2, ¶ 97), West first informed his supervisors that he suffered from PTSD on November 27, 2021 (ECF No. 51-2, ¶¶ 48-50). But McClinton documented serious problems with West's performance before that. She completed West's 30-day performance review on November 23, 2021, giving him the lowest possible rating in

every domain. (ECF Nos. 51-2, ¶ 38; 48-3 at 25.) The next day she sent an email to human resources outlining the problems she observed. (ECF Nos. 51-2, ¶ 41.)

Coming as it did before McClinton had any reason to suspect that West may claim to be disabled, her assessment could not have been a pretext for discrimination. Contrary to West's unsupported argument, no basis exists for concluding that McClinton "drafted the email to 'cover her tracks' after writing the evaluation" (ECF No. 51 at 10). McClinton's assessment, reflecting the lowest possible evaluation, set West on the path to termination.

The fact that his termination came in close proximity to his disclosure of his PTSD is insufficient to support an inference of pretext under the circumstances. Because West worked for the Postal Service for such a short time, everything happened in close proximity. Because West was subject to only a 90-day probationary period (ECF No. 51-2, ¶ 74), the Postal Service had only a short period of time in which to assess his performance and decide whether to fire him.

And while "an employer's failure to follow its own internal employment procedures *can* constitute evidence of pretext," *Jajeh v. Cty. of Cook*, 678 F.3d 560, 572 (7th Cir. 2012) (emphasis added) (quoting *Rudin v. Lincoln Land Cmty. Coll.*, 420 F.3d 712, 727 (7th Cir. 2005)), not every policy violation suggests pretext, *see Smeigh v. Johns Manville, Inc.*, 643 F.3d 554, 562 (7th Cir. 2011). There must be something about the policy violation to suggest that the deviation was motivated by an intent to discriminate. *See*

*Smeigh v. Johns Manville, Inc.*, 643 F.3d 554, 562 (7th Cir. 2011). Even if West's supervisors violated Postal Service policies by not discussing his performance reviews with him, West does not explain how that supports a reasonable inference of pretext.

West suggests that his supervisors sought to deny him the opportunity to improve his performance. This argument, however, is inconsistent both with his insistence that he was performing satisfactorily and his premise that his supervisors were acting with discriminatory animus. If his supervisors were intent on fabricating poor performance reviews as a pretext to fire him, his actual performance was immaterial. He could have been performing perfectly but his supervisors would have rated him poorly all the same. If his supervisors' disability animus motivated them to falsely rate his performance as poor, foregoing discussion of his review would not have hastened his termination.

The undisputed facts also set forth the reason why his supervisors did not discuss West's review with him. Because West's direct supervisor was on leave, McClinton completed the review but needed her supervisor to discuss it with West. (ECF No. 51-2, ¶¶ 43, 45.) When they were scheduled to discuss the review with West, his report of his co-worker's tirade superseded. (ECF No. 51-2, ¶ 46.) West then went on leave. There was simply no opportunity to discuss the review with him before he went on leave.

West also fails to demonstrate that there was anything improper in Bogrand completing West's 60-day evaluation based on his observation of West's performance on only two days. (ECF No. 51 at 9-10.) Supervisors routinely complete evaluations at fixed intervals based on their own observations and the input of others. The fact that it was completed only three weeks after West's 30-day review does not suggest pretext when West's and Bogrand's leave schedules meant that there was no opportunity for further observation.

Finally, the fact that an evaluation was completed only after the adverse employment action could support an inference that the review was pretextual. The defendant does not point to any explanation for why Bogrand signed West's 60-day review the day after West's termination. (ECF No. 48-3 at 26.) But the timing, standing alone, and in the face of McClinton's earlier review, is not enough to permit a reasonable jury to find that the review was a pretext for discrimination.

In sum, West has failed to present evidence that could lead a reasonable jury to find that "he suffered an adverse job action 'solely by reason of … his disability.'" *Swain*, 41 F.4th at 899 (quoting 29 U.S.C. § 794(a); citing *Felix v. Wis. Dep't of Transp.*, 828 F.3d 560, 568 (7th Cir. 2016)).

4. **Conclusion**

For the reasons set forth above,

**IT IS THEREFORE ORDERED** that the "Postal Service's Replies in Support of the SOF Disputed in West's RDPMF" (ECF No. 56 at 2-17) are stricken.

**IT IS FURTHER ORDERED** that the defendant's motion for summary judgment (ECF No. 46) is granted. West's failure to accommodate claim is dismissed without prejudice. West's discrimination claim is dismissed with prejudice. The Clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 22nd day of July, 2024.

_____
WILLIAM E. DUFFIN
U.S. Magistrate Judge